# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

JOSE ESCRIBANO, AL             §
LEBLANC, BRYCE MILLER,         §
ROBERT MILLS, MICHAEL STRAWN   §
and JAMES WILLIAMSON,          §
    Plaintiffs,           §     CIVIL ACTION NO.
                          §     1:16-cv-01196-RP
v.                             §
                          §
TRAVIS COUNTY, TEXAS, and      §
SARAH ECKHARDT                 §
in her official capacity       §

## PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**COME NOW,** Bryce Miller, Robert Mills, Michael Strawn, Jason Jewert, Michael J. Canales, and Belinda Mangum (collectively referred to herein as "Plaintiffs" or the "Lieutenants") and file this Response to Defendants' Motion for Summary Judgment [Doc. 28]:

### I.  Fair Labor Standards Act Claim

Travis County's motion for summary judgment on Plaintiffs' Fair Labor Standards Act claim is based entirely on Travis County's affirmative defense allegation that Plaintiffs are *bona fide* executives.  Since Travis County has the burden of proof, its standard to prevail on summary judgment is extremely high: "To obtain summary judgment, if the movant bears the burden of proof on an issue because as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the defense to warrant judgment in his favor." *Jackson v. City of San Antonio*, SA-03-CA-0049-RF, 2006 WL 2548545, at *3–4 (W.D. Tex. Aug. 31, 2006).  Travis County's motion and supporting evidence does not meet this substantial burden, even without the rebuttal evidence incorporated herein and attached hereto.

As set forth in the Court's summary judgment ruling in *Escribano I*,

The FLSA's implementing regulations define a *bona fide* executive employee as any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly direct the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

[*Escribano I*, Order [Doc. 51] at 8]. Travis County must establish each of the elements "beyond peradventure" to be entitled to summary judgment.

### A. Travis County has not provided competent evidence on most elements

Travis County has not provided any competent evidence to establish the salary basis, primary duty of management, or authority to hire and fire elements of its affirmative defense.

The only attempt at providing evidence that the Lieutenants are paid on a salary basis is a legal conclusion offered by an HR Manager, Kate Kearney, "they all are paid more than $100,000 a year on a salary basis." On even date herewith, Plaintiffs objected to this bald conclusion without factual adornment. This statement alone does not establish the salary basis element. Moreover, as set forth in the attached affidavits, each the Lieutenants are not paid on a salary basis. (Exs. 1-5).

Travis County similarly does not carry their burden in regard to the requisite authority to hire and fire. Though Travis County now asserts without citation to evidence that the Lieutenants "have the authority to hire or fire other employees"; in the joint

2

stipulation of facts in *Escribano I*, that Travis County attached as Exhibit 4 to its Motion in *Escribano II*, the parties agreed that "Plaintiffs did not have the authority to hire or fire employees." (Def. Ex. 4 at 2). Travis County's only evidence supporting this element of their claim is Captain Poole's statement that "The Lieutenant can also recommend to the Captain any discipline regarding one of his sergeants or deputies such as written reprimand, suspension or even termination." (Def. Ex. 5). But this assertion does not indicate whether any such recommendation is "given particular weight", as required by 29 C.F.R. § 541.100(a)(4). Poole also previously testified that the Lieutenants recommendations are not given particular weight: "Q.   So every step up, it would carry more weight.  Is that fair? A.   Yes." (Dep. Poole 114:12-14). Moreover, the Sheriff testified that he has final say on such matters. (Ex. 13, Dep. Hamilton 40-41).

Instead, as set forth on pages 20-21 of Plaintiffs Motion for Summary Judgment (which argument and evidence cited therein is incorporated herein by reference), promotion and discipline in the Sheriff's Office is governed by a civil service system, in which the Lieutenants participation is limited to voluntary hiring and promotional boards, and in which the Sheriff makes the ultimate decision and does not base this decision on recommendations from below.[1]  (Pl. Mot. [Doc. 27] at 21-22).

In regard to the primary duty of management element, Travis County provides no evidence.  Instead, Travis cites to portions of the definition of management in the Regulations and concludes "Plaintiffs engage in all of these activities and there is no real

---

[1] Outside the chain of command, the Lieutenants cannot discipline employees; instead all they have authority to do is provide verbal counseling, line entries, and coaching reports, but these measures are corrective, and not disciplinary in nature. (Ex. 1-6 to Pl. Mot. [Doc. 27]). As explained by Chief Sylvester, as opposed to disciplinary actions, "Corrective/Developmental actions, those are considered nonadverse per civil service. . . . And nonadverse means that, in theory, when you receive that type of corrective action, it's not harmful. It's not going to -- you're not going to lose any pay. You're not going to get demoted. You're not going to get transferred where you might lose shift differential pay. I mean, there's no adverse." (Ex. 8, to Pl. Mot. [Doc. 27] 52:19-53:6). The corrective and disciplinary procedures demonstrating this are set forth in the Sheriff's Office Policies and Procedures Section 1.3.7. (Ex. 7).

argument otherwise." (Def. Mot. at 7). Not only is this assertion false, it is not competent summary judgment evidence.

In addition, many of the "management tasks" that Travis County alleges the Lieutenants partake in, they do not. As set forth in pages 20-21 of Plaintiffs Motion for Summary Judgment (referenced above), the Lieutenants do not "appraise[] employees productivity and efficiency for purpose of recommending promotion . . . ." Promotion is governed by civil service, including oral and written boards; any appraisals of subordinates is not to recommend promotion. Similarly, the Lieutenants also do not "handle[] employee complaints and grievance" or "discipline employees"; again all that is governed by civil service. (Pl. Mot. [Doc. 27] at 21-22). Plaintiffs also do not plan or control the budget. (Pl. Mot. [Doc. 27], Ex. 1-6). Instead, as Chief Sylvester testified "the captains and the majors get together" and "put together a budget package and submit that to the sheriff and I to review to determine, you know, if we're going to get that. And then we may say, "Hey, you're right. We do need those," and we make that submission to the Commissioners Court and they go, "No, we're not going to fund it."" (Pl. Mot. Ex. 8, Sylvester Dep. 105:4-19). Captains, Majors, the Chief Deputy, and the Sheriff prepare the budgets (not the Lieutenants), and ultimately it is the Commissioner's Court decision whether or not to fund it.

None of the testimony demonstrates that Lieutenants have the authority to "set[] and adjust[] [subordinates] . . . hours of work." Just like the Lieutenants, sergeants and deputies pay is governed by the Peace Officer Pay Scale. (Ex. 1-6 to Pl. Mot. [Doc. 27]). Moreover, reducing overtime by flexing out work is a mandated policy from the Sheriff's Office, not a decision or discretion of the Lieutenants. (Ex. 8 to Pl. Mot. [Doc. 27] Dep. Sylvester, 150:22-151:1).

4

### B. Travis County has not met its burden that the Lieutenants management activities are not related to front line law enforcement

Despite having the burden to prove each element of its affirmative defense, Travis County only provides any evidence on the front line law enforcement exception.  In *Escribano I*, the Court succinctly synthesized the Department of Labor's amicus brief and other precedent:

> Persuaded by the foregoing cases and the briefing offered by the Department of Labor in those cases, the Court reads the law as follows: to determine whether a purported first responder is exempt from the FLSA's overtime requirement, a court must begin by asking whether the employee's primary duty involves frontline law enforcement or emergency response. The court answers this question by looking to see whether the employees' primary duty involves the types of non-exempt activities enumerated in the first responder regulation (e.g. preventing or detecting crimes, conducting investigations, preparing investigative reports, etc.). It makes no difference whether the activity involves the concurrent supervision or direction of subordinates: law enforcement and emergency response work is non-exempt even if the work contains elements of exempt management. If the court finds that the employee's primary duty is law enforcement or emergency response, then the employee is not an exempt executive employee, as her primary duty is not management.

[*Escribano I*, Order [Doc. 51] at 15].

### 1. The evidence cited by Travis County demonstrates Plaintiffs are front line law enforcement.

Much of the evidence of the evidence cited by Travis County to demonstrate the each of the Lieutenants are *bona fide* executives actually indicate supervision of front line law enforcement:  "He monitors calls and if he is the closest unit, he responds" (Def. Mot. at 9, ¶18.a); "Mangum supervised field operations for all of Travis County" *Id.* at 10, ¶19.a.; "She ensured that deputies responded to every call for service" *Id.*; "she monitored calls for service to ensure that the appropriate number of deputies were responding to critical incidents" *Id.*; "She would review calls for service and upgrade or downgrade them as needed" *Id.*; "She ensured that her deputies and sergeants had the training they needed to get them to perform to the best of their ability" *Id.*; "Overall her

job as a Patrol Lieutenant was to ensure: the correct response by deputies; that the deputies were doing what they need to do; and that the deputies had resources they needed"[2] *Id.*; "She monitors her MDC to manage operations and calls for service, especially since she has units working county-wide" *Id.* at ¶19.b.  "He spends only a few hours a week in the office and the rest of the time on the street where he is watching, supervising, and monitoring calls which he responds to if he is close or if it is a major call."  *Id.* at ¶21.  "As a patrol lieutenant, his duty is to maintain the shift and make sure there are enough people working and supervising those deputies as well."  *Id.*

Each of these duties is akin to duties that the Department of Labor in its *Mullins amicus* determined was evidence of front line law enforcement, not management.  (*See* Pl. Mot. [Doc. 27] at 5-8).

## 2.  Travis County's arguments regarding Plaintiffs is easily rebutted

Travis County's motion is easily defeated by reference to evidence already before the Court in Plaintiffs' Motion for Summary Judgment.  Rather than re-assert and cite each evidentiary citation and elucidation set forth in Plaintiffs' Motion, Plaintiffs incorporate herein by reference the evidence cited in Plaintiffs' Motion for Summary Judgment and the argument and authorities set forth in pages 5 through 19.

In addition, Ms. Kearney's affidavit does not support the assertion that "Lt. Miller has worked exclusively in Special Operations over the Auto Theft Unit."  (Def. Mot. p. 8).  Ms. Kearney's affidavit merely states "Miller is the Lieutenant over Special Operations at the East Command Center . . . ."  In reality, Lt. Miller was over East Command Special Operation and criminal investigations.  (Ex. 7 to Def. Mot. at 20:18-

---

[2] As explained by the Department of Labor, "the district court's findings that the sergeants . . . have responsibility over the police officers with whom they work alongside, and are looked to by police officers for guidance and direction, . . . do not support its conclusion that the sergeants' primary duty is management."  DOL *Mullins Amicus* Brief at 6.

6

22).   Part of that work as a lieutenant includes reviewing and auditing investigative reports of auto thefts, other thefts, criminal mischief, assaults, and personal property crimes.  *Id.* at 34:18-35:4, 18-19; 36:21-22.   This is "the preventing or detecting crimes; conducting investigations . . . ." that is specifically enumerated in 29 C.F.R. § 541.3(b)(1).  Moreover, the Department of Labor in the *Mullins amicus* determined that a supervisor's review of evidence vouchers; and review and verify complaint reports, stopandfrisk reports, and arrest reports was a front line law enforcement duty, even though the supervisors did not share that duty with subordinates.  *See* (Pl. Mot. [Doc. 27] at 7-8, citing *Mullins amicus at* 7, 10 n.9).   Lt. Miller also writes reports for fleet collisions; for critical incidents; and reviews written statements of suspects and probable cause affidavits;       (Ex. 8 to Def. Mot. at 49:8-12; 59:5-9; 66:9-16), akin to the supervisors in Mullins "handled unusual or serious incidents, "instances where a firearm has been discharged, felonies, towing incidents . . . ."  (Pl. Mot. [Doc. 27] at 7-8, citing *Mullins amicus at* 7, 10 n.9).  Lt. Miller is responsible for ensuring that the deputies are performing their operational activities; ensuring the deputies "do their job" (Ex. __ to Def. Mot. at 59:19-60:1).   Lt. Miller is also the "first up in the boat  to go to the emergency operations center to help coordinate in the case of a flooding" *Id.* 67:9-11.  As the Lieutenant over Special Operations, Lt. Miller loads loose live stock as part of the Sheriff's Office Estray Unit and he releases vehicles out of the impound lot; he has helped a citizen fill up their car with gas when their child had recently died; and he carries handcuffs just like the deputies do.  (*Id.* 112:14-113:3).

In regard to Lt. Strawn, Captain Poole's affidavit admits that Lt. Strawn monitors the computer aided dispatching for the SWAT unit.  (Def. Mot. [Doc. 28], Ex 5 thereto).  In addition, as the SWAT Lieutenant, Lt. Strawn responds to call outs for: felony warrant

arrests of violent suspects; barricaded subjects; and administering search warrants. During these call outs, Lt. Strawn is physically at the scene working alongside sergeants and deputies; he rides in the same armored vehicles; he carries the same AR-15 rifle; and wears the same heavy vest and other equipment of the troops.  (Ex. 2).

In regard to Lt. Mills, his testimony does not indicate he was "taking the lead in creating a three year staffing plan" (Def. Mot. at 9), instead he was gathering information and sending it up the chain of command; moreover, an annual report occurs once a year and therefore cannot be a significant duty.  (Def. Mot. [Doc. 28] Ex. 8, 86:21-87:17). Moreover, the School Resource Officer Unit is responsible for ensuring the safety of schools and children in the schools.  As Lieutenant over the SRO unit, Lt. Mills consistently interacts with schools regarding threats to students and staff and such issues as guns in schools.  Recently Lt. Mills was also required to coordinate protection of students during two school walkouts across major traffic thoroughfares.  (Ex. 1).

Office work  Whether or not the Lieutenants perform their front line law enforcement work "'in the field' is not the dispositive element" *Mullins v. City of New York*, 653 F.3d 104, 114-15 (2d Cir. 2011).  Accordingly, work in the "office" though arguably one factor of the standard primary duty test, is not relevant to the front line law enforcement inquiry.  Instead, "[t]he [first responder] regulation . . . focuses on *particular types of activities*, which are performed generally by front-line responders" and "does not . . . depend fundamentally on the location of those activities." *Id.*  For cases involving front line law enforcement, the "type of activities" is important, not the location of those activities.  Therefore, Lt. Strawn, and Lt. Miller's testimony cited by Travis County (even if quoted accurately) that they spent *x* percent of time "in the office" or that they have to do paperwork has no bearing on what duties they undertook in the office or what the

8

purpose of the paperwork was. *See* (Ex. 10 to Def. Mot. [Doc. 28], Strawn Dep. 26:6-27:11); (Ex. 7 to Def. Mot. [Doc. 28], Miller Dep. 28:1-7).

### 3. Primary duty is supervising day-to-day operations (*i.e.* front line law enforcement)

For the primary duty element of Travis County's affirmative defense, the Court has to determine "the principal, main, major or most important duty that the employee performs." 29 C.F.R. §541.700(a) (definition of primary duty). This primary duty is not in dispute; Plaintiffs primary duty is "to manage and supervise the day-to-day operations of the units." (Def. Mot. [Doc. 28] at 6).

The Court previously held that management and supervision of law enforcement and emergency response work is non-exempt:

> "It makes no difference whether the activity involves the concurrent supervision or direction of subordinates: law enforcement and emergency response work is non-exempt even if the work contains elements of exempt management."

(*Escribano I*, Order [Doc. 51] at 15). The question then is, is the "day-to-day operations of the units" law enforcement or emergency response work—because if so, management or supervision of such work is exempt. As set forth in Plaintiffs' Motion for Summary Judgment, each unit managed and supervised by Plaintiffs is a front line law enforcement unit. (Pl. Mot. [Doc. 27] at 9-14).

In addressing this construction in *Escribano I*, the Court stated "The first responder regulation does not create a transitive property of management such that the direction or supervision of frontline law enforcement, no matter how attenuated, is itself considered frontline law enforcement." (*Escribano I*, Order [Doc. 51] at 17-18). The Court's characterization does not accurately reflect Plaintiffs' contention. Managing the

"day-to-day operations" is *direct supervision* (*i.e.* not attenuated) of front line law enforcement police officers' day to day work.

Operations in this instance has its ordinary meaning; it is the principle service that the organization provides to the community (*i.e.* law enforcement).  In the Sheriff's Office, operations is the opposite of administrative.  (*See* Pl. Mot. [Doc. 27] at 9-11). Operations is the front line law enforcement duties of the Sheriff's Office as opposed to the administrative/Command Staff side of the organization where the actual *bona fide* executives work.

Day-to-day does not mean long term planning that some *bona fide* executive detached from front line law enforcement would undertake; it means what it says, supervising the everyday work of troops.  Despite other tasks Plaintiffs might undertake, that is their *primary duty*.  All the other evidence is superfluous because Travis County admits this.  And that is dispositive.

Who does the front line law enforcement regulation protect, if it does not protect the managers who work day in and day out (day-to-day) in providing law enforcement to the citizens Travis County (operations)?

If it is still unclear that Lieutenants are part and parcel of front line law enforcement, the Court only need to look at what they wear and what the physical requirements of their job is.

Just as the DOL noted the border patrol agents work required "protecting one's self and others from physical attacks" and that the non-exempt US Marshall position requires " 'physical strength and stamina . . .' and the employee 'may be subject to physical attack, including the use of lethal weapons'", Under the duties and responsibilities section of the job description, the Lieutenants "Uses reasonable force

when necessary" and "Maintains physical fitness in order to perform essential duties of the position." (Ex. 1-B at 2). Under the "Skill in" subsection, the Lieutenants "Must be proficient in the use of defensive tactics requiring physical force and if certified, the use of intermediate impact weapons and firearms" (Ex. 1-B at 3). Under the "Ability to" subsection, the Lieutenants must have the ability to: "Use appropriate physical force, including deadly force, when necessary to prevent the imminent threat of death or serious bodily injury to others or self" and "Maintain physical endurance and agility." (Ex. 1-B at 3). Because Lieutenants are in the field, they are subject to "[e]xposure to excessive heat and cold (outdoor conditions)." Like the border patrol agents referenced by the DOL, the Lieutenants job "may involve danger due to contact with criminals and suspects as well as high speed driving." (Ex. 1-B at 3). Moreover, Lieutenants must be able to "partially lift and drag an average weight person of 150 lbs, a distance of 75 feet for the evacuation of individuals unable to assist themselves during emergencies, must be able to physically restrain hostile and combative subjects . . . ." (Ex. 1-B at 3).

As the photographs and testimony attached to Plaintiffs' Motion demonstrate, much like the border patrol agents that the Department of Labor cited as an example as a non-exempt employee, the Lieutenants on patrol are required to wear (or have ready access to) a bullet resistant vest, carry a firearm, often have AR-15 assault rifles in their vehicles, drive marked patrol cars, and where uniforms clearly indicating their peace officer status. (Pl. Mot. [Doc. 27] Ex. 1-6).

In further support of their primary duty being front line law enforcement, the Lieutenants are also required to monitor Computer Aided Dispatching and the radio, and if a call for service comes across either device, the Lieutenants must first attend to the

call for service before doing any other activities.  (Ex. 1-5).  Supervising front line law enforcement is their primary duty, and all other duties take a back seat.

Why do the Lieutenants dress like front line law enforcement officers, drive front line law enforcement vehicles, and carry front line law enforcement equipment if their primary function is not a part of the operational side of the Travis County Sheriff's Office?

### 4.  Four part primary duty test

As the Court held, "When determining whether an employee's primary duty is management, a court should consider: (1) "the relative importance of the exempt duties as compared to other types of duties," (2) "the amount of time spent performing exempt work," (3) "the employee's relative freedom from supervision," and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." (*Escribano I*, Order [Doc. 51] at 9).

The undisputed fact that Plaintiffs primary duty is "to manage and supervise the day-to-day operations of the units" accounts for the first two elements of this test: (1) the exempt duty of managing front line law enforcement on a day to day basis is the most important duty; and (2) it is undisputed that the majority of time is spent performing this exempt work—it's the primary duty.

As for the third element, the Plaintiffs are not senior management, like the Captains in the Sheriff's Office.  (Ex. 10, at 1 to Pl. Mot. [Doc. 27]).  Plaintiffs only have discretion in the midst of exempt first response, and almost all their other decisions are strictly scrutinized and directed by my superiors or governed by the Office's written policies and procedures, and they have little or no discretion to act independently.  (Ex. 1-

6 to Pl. Mot. [Doc. 27]).  Plaintiffs have no discretion on whether or not to respond to emergency calls for service.  *Id.*

In regard to the fourth element, Plaintiffs are paid only marginally more than many of the Sergeants that rank beneath them.  As set forth in the attached Travis County Job Classifications, the maximum pay for law enforcement lieutenants is $115,848.30. (Ex. 6 at p. 11).

As set forth in Exhibit 7, the actual annual pay for Sergeants is nearly the same and sometimes exceeds this amount, in part because Sergeants receive overtime pay. Sergeants annually earned $110,398.03 (Ex. 8 at Bates 0946815); $112,379.38 (Bates 0946834); $110,430.26 (Bates 0947157); $109,483.30 (Bates 947195); $113,013.76 (Bates 0947252); $115,618.52 (Bates 0947442); $118,244.88 (Bates 0941625); $109,998.96 (Bates 0942483); $131,543.72 (Bates 0942712); $123,670.47 (Bates 0942736); $111,774.90 (Bates 0941740); $109,354.09 (Bates 0943687); $110,955.51 (Bates 0943711); $115,625.29 (Bates 0943987); $112,162.66 (Bates 0944011).

The true divide between pay is between the Command Staff, beginning at captain, and the lieutenants.  The highest pay for law enforcement captains is $142,825.07, nearly $30,000 more than the highest pay for law enforcement lieutenants.  (Ex. 6 at p. 12).

### 5.  Command Staff Testimony demonstrates Plaintiffs are entitled to Summary Judgment

The testimony of Sheriff Office Command Staff demonstrates that there is no genuine issue of material fact and that, not only must Defendants' motion be denied, but also Plaintiffs are entitled to summary judgment in their favor.

Just like the Lieutenants (Ex. 1-5), Chief Sylvester testified that lieutenants work directly with deputies on a daily basis:

8   Q.   So the sergeants and lieutenants work

> 9  with the guys day in and day out.  Correct?
> 10   A.   Correct.
> 11   Q.   What do the guys mean?
> 12   A.   The deputies.

(Ex. 8 to Pl. Mot. [Doc. 27] Dep. Sylvester, 82:8-12).  Sheriff Hamilton testified that it

was Lieutenants duty to work with deputies in the field:

> 11   Q. What do you mean by, very important that
> 12 they manage their troops out in the field?
> 13   A.   To make sure that they're out there doing
> 14 what they're supposed to do. I know at some point in
> 15 time when I was out working  out in the field, we
> 16 didn't have the same amount of officers that we have
> 17 now, but there were some officers that would just
> 18 gather up and sit up and talk for two or three hours
> 19 in some little cubbyhole  and just talk.  So the
> 20 supervisors need to be out and about making sure that
> 21 the troops are patrolling and doing their job.
> 22   Q. And the supervisors are sergeants and
> 23 lieutenants. Is that right?
> 24   A.   That's correct.

(Ex. 8 to Pl. Mot. [Doc. 27], Dep. Hamilton 30:11-24).  The Sheriff also testified that

Lieutenants supervise deputies, not just sergeants.  *Id.* 71:17-25.

Captain Smith testified that there is an expectation that Lieutenants will respond

to major emergency calls and to calls to which they are the closest unit. (Ex. 8 Dep.

Smith, 46:8-18).  Captain Smith also had to instruct a lieutenant that lieutenants do not

have the authority to approve overtime.  (Ex. 8 Dep. Smith, 116:15-117:2).

Captain Smith also testified that due to short staffing of sergeants, Lieutenants

have to do the sergeants job at least once a week and frequently every single day of the

work week.   (Ex. 8 Dep. Smith, 47:21-48:21; 52:24-53:9).  Former Chief Sylvester

testified that based on population growth and models demonstrating increased numbers of

calls for service, the Sheriff's Office needed more deputies, sergeants, lieutenants, and

captains. (Ex. 8 to Pl. Mot. [Doc. 27] Dep. Sylvester, 183-185). As testified to by Captain

Smith, in a sergeant's absence, a Lieutenant must fulfill the non-exempt duties of the sergeants. In *Pantex*, the Court found that "At the times relevant to this lawsuit the Pantex Fire Department did not have enough EMT and Paramedic personnel per shift to make its supervisory personnel truly supervisors . . . ."*Bullard v. Babcock & Wilcox Tech. Services Pantex, L.L.C.*, CIV.A. 2:07-CV-049-J, 2009 WL 1704251, at *19 (N.D. Tex. June 17, 2009), *vacated sub nom. Stokes v. BWXTPantex, L.L.C.*, 424 Fed. Appx. 324 (5th Cir. 2011). Based on this fact, the Court held, "The lack of sufficient EMT and Paramedic personnel does not entitle Defendant to wrongfully classify any non-exempt employee as FLSA exempt." *Id.* Similarly, Lieutenants picking up extra duties of Sergeants (which largely mirror their own in the first place) because of understaffing, does not entitle Travis County to wrongly classify the Lieutenants as non-exempt.

Lieutenants having to take on the non-exempt work of sergeants is exacerbated by the Sheriff's Office attempt to keep down overtime amounts by sending sergeants home early:

> 18 To avoid overtime, you and your superiors
> 19  discussed flexing that sergeant's time out.  Is that
> 20  right?
> 21     A   Yes.
> 22       Q And that means that the sergeant wouldn't work
> 23  any more that week, if at all possible.  Right?
> 24      A   That's  correct.
> 25     Q  And so if that sergeant didn't work, who filled
> 1  his other 10-hour shift?
> 2    A   The lieutenant.

(Ex. 8 Dep. Smith, 106:18-107:2).

## II.  Constitutional Claims

Plaintiffs' claims brought under the United States and Texas Constitutions and 42 U.S.C. § 1983 are intended to enforce Plaintiffs specific property rights granted by Texas statute and Travis County policy.

Contrary to Defendants assertion, the FLSA does not preclude other overtime legislation by states. Instead, the FLSA merely sets a floor for overtime compensation, and the states are free to provide protection to employees that exceed the minimum standards set forth in the FLSA. 29 U.S.C.A. § 218. The FLSA does not preclude claims based on state law and Section 1983 may be used to enforce the County's blatant violation of state law.

The United States District Court for the Eastern District granted summary judgment to police officers of the City of Beaumont based upon claims that they were entitled to overtime for work over 40 hours in a week pursuant to Texas Local Government Code § 142.005. *Karr v. City of Beaumont, Tex.*, 950 F. Supp. 1317, 1324 (E.D. Tex. 1997). Section 142.005 provides, "A police officer may not . . . be required to work more hours during a calendar week than the number of hours in the normal work week of the majority of the employees of the municipality other than fire fighters and police officers." *Id.* The Court held that "Under Section 218 of the FLSA, Defendants cannot rely on the Section 207(k) exemption [providing for 28 day work periods] because this exemption cannot "excuse noncompliance with any Federal or State law or municipal ordinance establishing ... a maximum workweek lower than the maximum workweek established under this Act...." *Id.* Instead, the Court granted the police officer's summary judgment against the City and police chief sued in his individual capacity under the Government Code because "Civilian employees working for the City of Beaumont are compensated for time worked in excess of 40 hours in a work week." *Id.* Texas Local Government Code § 157.022 applies in the same manner to Travis County, and just as in *Kurr*, Travis County admits that it pays its civilian employees for all hours worked in excess of 40 hours a week.

Travis County has only moved to dismiss Plaintiffs Constitutional claims pursuant to FRCP 12(c), which standard Plaintiffs have already exceeded above.  Nevertheless, in an abundance of caution, Plaintiffs provide the following explication of their claims supported by summary judgment evidence.

Under 42 USC § 1983, individual employees of state and local government may be sued in their individual capacities for damages, declaratory or injunctive relief and state and local governments can be sued for injunctive and declaratory relief.  *Hafer v. Melo*, 502 U.S. 25 (1991); *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).  County and local governments do not have sovereign immunity to and are subject to suit for violations of the Constitution and Section 1983.  *Owen v. City of Indep., Mo.*, 445 U.S. 622, 647–48, 100 S. Ct. 1398, 1413–14, 63 L. Ed. 2d 673 (1980).

Similarly, Article I, Sec. 19, of the Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." "The due course that protects citizens requires not only procedural but also substantive due course." *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977).  "[A]n ordinance, and even a legislative enactment, is subject to the constitutional attack that same is unreasonable, oppressive and arbitrary to such extent as to deprive one of property without due process of law. This has been decided innumerable times."  *City of W. Univ. Place v. Ellis*, 134 Tex. 222, 226, 134 S.W.2d 1038, 1040 (Comm'n App. 1940).

In the instant case, Travis County and Judge Eckardt, under color of state law, custom, or policy have failed to pay Plaintiffs overtime in contrast to the vested property right created for Plaintiffs by Texas Local Government Code Section 157.022 and Travis County policy.  *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691,

98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978) ("Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.").   Defendants have not paid Plaintiffs overtime and refuse to pay Plaintiffs overtime, despite officers of Travis County admitting that such payments were due under state law and Travis County Policy. (Ex. 1-5).

Section 157.022 of the Local Government Code provides:

(a) A peace officer employed by a county with a population of more than one million may not be required to work more hours during a calendar week than the number of hours in the normal work week of the majority of other county employees. . . .

(c) A peace officer who elects to work extra hours during a calendar week shall be compensated on a basis consistent with overtime provisions of the county personnel policy.

Tex. Loc. Gov't Code Ann. § 157.022.

On July 15, 2015, Christina Adair, a senior employee in Travis County's auditor's office, emailed the Travis County Sherriff's Office, Chief Deputy, Jim Sylvester.  This email was entitled "Overtime" and discussed Section 157.022 of the Texas Local Government Code.  Ms. Adair stated:

Section 157.022 of the local government code, see below, will probably prevent us from changing from 40 hours just like it required us to move from the 160 hour overtime trigger to today's 40 hour trigger once the 2010 census showed that Travis County had reached a population of more than one million.

Ms. Adair then excerpted the entirety of Section 157.022 in her email.  (Ex. 9, Dep. N. Riley, Ex. 1 attached thereto).  In this email, Ms. Adair admitted that Section 157.022 applied to peace officers in Travis County because the 160 hour work period (i.e. 28 day work period) was changed to a 40 hour a week work period as required by Section 157.022 once the population of the County hit 1,000,000.  *Id.*  In their Answer to Plaintiffs' Third

Amended Complaint, Travis County admits that each of the Plaintiffs are peace officers. (Def. Answer [Doc. 19] ¶9).

In addition to requiring that peace officers' overtime be calculated pursuant to a calendar week rather than a calendar month, Section 157.022 also requires that Travis County pay peace officers overtime consistent with how it pays other county employees.

County Auditor Nicki Riley testified as follows:

19 Q. Okay. If you read Section 157.022(C) -- go
20 ahead and read that to yourself, please.
21 A. Okay.
22 Q. What does that section mean to you?
23 MS. YBARRA: Objection; form.
24 THE WITNESS: I'm thinking.
25 Q. (BY MR. SCHEICK) Okay.

1 A. It means to me that if a peace officer works
2 over 40 hours -- extra hours -- according to our
3 personnel policy, it's over 40 hours -- they'll be
4 compensated in accordance with our policy.
5 Q. Okay. So Travis County's policy is over 40
6 hours a week, right?
7 A. Yes.
8 Q. And so if a peace officer works over 40 hours a
9 week, they should be compensated for overtime just like
10 everyone else. Is that what this says?
11 A. That's what it says.

(Ex. 9, Dep. Riley 88:19-89:11).  Auditor Riley admits that Travis County has a policy to pay its employees over 40 hours a week.  Auditor Riley also admits that if a peace officer (such as Plaintiffs) work over forty hours a week, they are entitled to overtime.  However, Travis County refuses to pay such overtime in contravention of state law, its policy, and the property interests protected by the United States and Texas Constitution.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that Defendants' Motion for Summary Judgment be denied in all respects and for such further relief to which they may show themselves justly entitled.

Respectfully submitted,

*/s/ Jacob Scheick*
Bo Blackburn
State Bar No. 24006853
Jacob Scheick
State Bar No. 24060563
Almanza, Blackburn & Dickie, LLP
2301 S. Capital of Texas Hwy.
Bldg. H
Austin, Texas 78746
(512) 474-9486
(512) 478-7151 – Fax
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 19, 2018, a copy of the foregoing was served upon the following counsel of record via the Court's electronic filing system and via facsimile:

LESLIE W. DIPPEL
Assistant Travis County Attorney
State Bar No. 00796472
Leslie.Dippel@traviscountytx.gov
AMY S. YBARRA
Assistant Travis County Attorney
State Bar No. 24013573
Amy.Ybarra@traviscountytx.gov

*/s/ Jacob Scheick*
Jacob Scheick

20

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE ESCRIBANO, AL | § | |
| LEBLANC, BRYCE MILLER, | § | |
| ROBERT MILLS, MICHAEL STRAWN | § | |
| and JAMES WILLIAMSON, | § | |
| Plaintiffs, | § | CIVIL ACTION NO. |
| | § | 1:16-cv-01196-RP |
| v. | § | |
| | § | |
| TRAVIS COUNTY, TEXAS, and | § | |
| SARAH ECKHARDT | § | |
| in her official capacity | § | |

# APPENDIX OF SUMMARY JUDGMENT EVIDENCE IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JOSE ESCRIBANO, AL** | § | |
| **LEBLANC, BRYCE MILLER,** | § | |
| **ROBERT MILLS, MICHAEL STRAWN** | § | |
| **and JAMES WILLIAMSON,** | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO.** |
| | § | **1:16-cv-01196-RP** |
| **v.** | § | |
| | § | |
| **TRAVIS COUNTY, TEXAS, and** | § | |
| **SARAH ECKHARDT** | § | |
| **in her official capacity** | § | |

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

Before me, the undersigned notary, on this day personally appeared, Jacob Scheick, attorney of record for the above named Plaintiffs, known to me to be the person whose mane is subscribed to the foregoing instrument, and after I administered an oath to him, and he is duly authorized to execute this affidavit on behalf of Plaintiffs that the Exhibits referenced in and attached to this Appendix in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment are true and correct copies of the originals.

By: _____
Jacob Scheick
State Bar No. 24060563
Almanza, Blackburn Dickie & Mitchell, LLP
2301 S. Capital of Texas Hwy. Bldg. H
Austin, Texas 78746
(512) 474-9486
(512) 478-7151 – Fax

**ATTORNEYS FOR PLAINTIFFS**

SUBSCRIBED AND SWORN to before me by Jacob Scheick on this 19th day of January, 2018.

_____
Notary Public, State of Texas

NOEL L. STOUT
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
06-19-2019

## TABLE OF CONTENTS TO APPENDIX

<u>**Exhibit**</u>        <u>**Description**</u>

1.        Affidavit of R. Mills

2.        Affidavit of M. Strawn

3.        Affidavit of M. Canales

4.        Affidavit of B. Mangum

5.        Affidavit of J. Jewert

6.        Travis County Classification Table

7.        Sergeants Pay (submitted under seal)

8.        Deposition of C. Smith

9.        Deposition of N. Riley

Plaintiffs' Motion for Summary Judgment [Doc. 27] and Exhibits 1-12 thereto, are hereby incorporated into and/or as evidence in support of Plaintiffs' Response to Defendants' Motion for Summary Judgment