## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **BRYCE MILLER, ROBERT MILLS,** | § | |
| **MICHAEL STRAWN, JASON JEWERT** | § | |
| **MICHAEL CANALES, and** | § | |
| **BELINDA MANGUM** | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO.** |
| | § | **1:16-cv-01196-RP** |
| **v.** | § | |
| | § | |
| **TRAVIS COUNTY, TEXAS, and** | § | |
| **SARAH ECKHARDT** | § | |
| **in her official capacity** | § | |

### PLAINTIFFS' MOTION FOR JUDGMENT ON THE VERDICT

**COME NOW,** Bryce Miller, Robert Mills, Michael Strawn, Jason Jewert,

Michael J. Canales, and Belinda Mangum (collectively referred to herein as "Plaintiffs"

or the "Lieutenants") and file this Motion for Entry of Judgment and in support thereof,

would show as follows:

### I.   INTRODUCTION

Plaintiffs seek entry of judgment on the Jury's verdict that:

A. Plaintiffs proved their prima facie case that the Plaintiffs worked over 40
   hours in a workweek and were not compensated for the same;

B. Defendants had not proved the elements of their affirmative defense under the
   Fair Labor Standards Act ("FLSA"): (1) that each of the Plaintiffs primary
   duty is management and not front line law enforcement and (2) that that each
   of the Plaintiffs suggestions and recommendations as to hiring, firing,
   advancement, promotion, or any other change of status are given particular
   weight;

C. Plaintiffs proved that Travis County knew or showed reckless disregard for
   the fact that its conduct was prohibited by the FLSA;

D. Awarding the FLSA backpay found by the jury and an equal amount of
   liquidated damages, [1] pre- and post-judgment interest;

---

[1] "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a
reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C.A. § 216 (West)

E.  In regard to the Section 1983 claim, Plaintiffs proved that the overtime provision of the county personnel policy requires employees to be compensated at 1.5 times their regular rate over 40 hours in a workweek and that Plaintiffs proved each element of their Section 1983 claim; and

F.  Pursuant to F.R.C.P. 57 and 28 U.S.C. §§ 2201 *et seq.* declare that Defendant must compensate all law enforcement lieutenants (as peace officers in the Travis County Sheriff's Office) overtime pursuant to Texas Local Government Code Chapter 157, and permanently enjoin Defendant from failing and refusing to pay law enforcement lieutenants in the Travis County Sheriff's Office one and one-half times their regular rate for all hours in excess of 40 worked in each work week.[2]

## II. MOTION FOR ENTRY OF JUDGMENT ON THE JURY'S VERDICT

The jury's verdict has ample support in the record evidence.[3]

**Plaintiffs' Prima Facie Case**

Plaintiffs proved their prima facie case that the Plaintiffs worked over 40 hours in a workweek and were not compensated for the same.  According to the Fifth Circuit,

An employee has met her requisite burden of proof: if [she] proves that [she] has in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

*Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005).

The jury was not asked questions regarding Plaintiffs prima facie case because the parties agreed (without objection) that Plaintiffs had established their prima facie claim.  As set forth in the Jury Charge [Doc. 65]: "*The parties agree that Plaintiffs have stated a claim under the FLSA*, but the County claims the Plaintiffs are not entitled to overtime pay because Plaintiffs fall within the scope of the FLSA's executive employee exemption." (Jury Charge p. 6) (emphasis added).

---

[2] In the alternative (and as a backstop to) the award of backpay, attorney's fees, and costs under the FLSA, Plaintiffs ask for such remdies under their Section 1983 claim, including the damages awarded in the jury's answer to Question 9 [Doc. 70], which is incorporated herein by reference.

[3] The following citations to trial evidence are approximate and based upon memory as a trial transcript had not been obtained at the time of this motion.

The jury also determined that each of the Plaintiffs had worked overtime and were not compensated for it, as indicated by their award of damages to each Plaintiff in answer to Jury Questions 4(a), 4(b), and 6.  (Verdict Form [Doc. 70] p. 3).  As set forth below, there was ample evidence to support these backpay calculations.  Plaintiffs met their burden at trial.

**Travis County's Affirmative Defense**

The §13(a)(1) exemptions are construed narrowly against the employer seeking to assert them; the *employer bears the burden of proving that employees are exempt*. *Dalheim v. KDFWTV,* 918 F.2d 1220, 1224 (5th Cir. 1990). The employer must show that the employee falls "plainly and unmistakably" within the claimed exemption. *Brennan v. Texas City Dike & Marina, Inc.,* 492 F.2d 1115, 1117 (5th Cir. 1974), citing *A. H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493 (1945); *Maestas v. Day & Zimmerman, LLC,* 664 F.3d 822, 826 (10th Cir. 2012). The employer must "prove an FLSA exemption applies by clear and affirmative evidence." *Nelms v. Kramer,* 2012 WL 290306 at *2 (W.D. Tex. 2012) and cases cited therein at n.15.

To qualify under the *bona fide* executive exemption the employer must prove that the employee:

> (1) is compensated on a salary basis at a rate not less than $455 per week;
> (2) have as his/her primary duty management of the employer's enterprise or a customarily recognized subdivision thereof;
> (3) customarily and regularly direct the work of two or more other employees; and
> (4) have authority (a) to hire or fire other employees or (b) to make recommendations regarding hiring, firing, advancement, promotion or other changes of employment status that "are given particular weight.

29 C.F.R. § 541.100.

However, 29 C.F.R. § 541.3(b), often referred to as front line law enforcement or first responder regulation, significantly changes the primary duty test set forth in element

(2) above because though managerial or supervisory work might ordinarily be considered an exempt duty, under Section 541.3(b) such duties are not considered exempt when they are performed in conjunction with front-line law enforcement work.  Section 541.3(b) provides that FLSA exemptions do not apply to peace officers and similar employees, *regardless of rank or pay level* who perform policing-type activities:

> The section 13(a)(1) exemptions and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, . . . and similar employees, regardless of rank or pay level, who perform work such as . . . rescuing . . . crime or accident victims; preventing or detecting crimes; conducting investigations . . . for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected . . . criminals, . . . ; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; *or other similar work*.

29 C.F.R. § 541.3(b)(1) (emphasis added).  In its binding construction, the Department of Labor found that 29 C.F.R. 541.3(b) requires that:

> [1] when inquiring into an employee's primary duty, "field law enforcement work by [a] police officer (*i.e.* front line law enforcement)" does not count as management, and
> [2]  "if a police officer's primary duty is field law enforcement work, then his or her primary duty is not management even if he or she directs other officers in the course of performing the field law enforcement work."

DOL *Mullins Amicus* Br. at 1.

### *Primary duty of front line law enforcement*

Ample evidence support the jury's verdict that Travis County failed to establish that Plaintiffs' primary duty was management and not front line law enforcement.

*First*, the parties stipulated that "At all times relevant to this suit, part of each of the Plaintiffs' job duties was to manage the day-to-day operations of units consisting of sergeants  and deputies." (See Stipulation 4 to Court's Charge to the Jury [Doc. 65]). Managing the day to day operations of law enforcement units is the epitome of the front line law enforcement exception to the executive exemption.  Management of such day to day

operations, therefore "is not management even if he or she directs other officers in the course of performing the field law enforcement work." DOL *Mullins Amicus* Br. at 1.

*Second*, the Lieutenants' job descriptions indicate that they are a part of front line law enforcement. (Exhibit J-4). The Lieutenants' job description indicates that the "Lieutenants leads *operational segments* engaged in all functions related to law enforcement duties to protect lives, property and rights of the citizens of Travis County." *Id.* (emphasis added). Under the duties and responsibilities section of the job description, the Lieutenants "Uses reasonable force when necessary" and "Maintains physical fitness in order to perform essential duties of the position." *Id.* Under the "Skill in" subsection, the Lieutenants "Must be proficient in the use of defensive tactics requiring physical force and if certified, the use of intermediate impact weapons and firearms" *Id*. at 3. Under the "Ability to" subsection, the Lieutenants must have the ability to: "Use appropriate physical force, including deadly force, when necessary to prevent the imminent threat of death or serious bodily injury to others or self" and "Maintain physical endurance and agility." *Id.* Because Lieutenants are in the field, they are subject to "[e]xposure to excessive heat and cold (outdoor conditions)." *Id.*

*Third*, the testimony of each of the Plaintiffs demonstrated that the Lieutenants on patrol, special operations, and SWAT are required to wear (or have ready access to) a bullet resistant vest, all carry a firearm, often have AR-15 assault rifles in their vehicles, drive marked patrol cars, and wear uniforms clearly indicating their peace officer status. Such items are only necessary for peace officers on the front-line, in harm's way, and interacting with the public.

*Fourth*, each of the Plaintiffs testimony demonstrated that their work epitomized the enumerated duties of 29 C.F.R. § 541.3(b)(1). Throughout the relevant period, each of

Lieutenants Mills, Strawn, Jewert, Canales, and Mangum "perform work such as . . . rescuing . . . crime or accident victims; pursuing, restraining and apprehending suspects; detaining or supervising suspected . . . criminals, . . . ; interviewing witnesses; . . . preparing investigative reports; *or other similar work*." 29 C.F.R. § 541.3(b)(1) (emphasis added).  As he testified, Lt. Miller's work also epitomized the enumerated duties of "preventing or detecting crimes; and conducting investigations . . . for violations of law . . . ." *Id.*

*Fifth*, the uncontroverted testimony indicated that the Lieutenants were paid on the Peace Officer Pay Scale (POPS Scale), unlike the ranks of Captain and above.  As set forth in Travis County Code, to be eligible to be paid on the POPS Scale, the Lieutenants have to be "actively involved in law enforcement activity".  (J-70, Bates 3200683).

*Sixth*, if a sergeant is absent or there is inadequate staffing, a Lieutenant must fulfill the non-exempt duties of the sergeants.  Chief Jim Sylvester testified that based on population growth and models demonstrating increased numbers of calls for service, the Sheriff's Office needed more deputies, sergeants, and lieutenants.  Captain Craig Smith testified that it was the Travis County Sheriff's Office policy to give sergeants time off ("flex") in order to keep overtime down, and that when a sergeant was not at work, the Lieutenants would do the jobs of the sergeant.  Lieutenant Canales testified that, while he was a captain, the directive was to use lieutenants for on call and call back work in order to keep overtime down for sergeants and deputies.

In *Pantex*, the Court found that "At the times relevant to this lawsuit the Pantex Fire Department did not have enough EMT and Paramedic personnel per shift to make its supervisory personnel truly supervisors . . . ."  *Bullard v. Babcock & Wilcox Tech. Services Pantex, L.L.C.*, CIV.A. 2:07-CV-049-J, 2009 WL 1704251, at *19 (N.D. Tex. June 17, 2009), *vacated sub nom. Stokes v. BWXT Pantex, L.L.C.*, 424 Fed. Appx. 324

(5th Cir. 2011).  Based on this fact, the Court held, "The lack of sufficient EMT and Paramedic personnel does not entitle Defendant to wrongfully classify any non-exempt employee as FLSA exempt."  *Id.*  Similarly, Lieutenants picking up extra duties of sergeants (which largely mirror their own in the first place) because of understaffing, does not entitle Travis County to "wrongfully classify a non-exempt employee as FLSA exempt." *Id.*

*Seventh*, only "high-level" police executives whose primary duty are managerial tasks undertaken exclusive of (*i.e.* not in conjunction with) with front-line law enforcement activities qualify for the executive exemption.  *See* DOL *Mullins Amicus* Brief at 4; DOL 2004 Final Rule, 69 Fed. Reg 221229-30.  The Lieutenants cannot be considered "high-level" officials under any definition of the term.  The evidence showed that the Sherriff's Department has a clear delineation between Command Staff and peace officers.  The ranks of captain, major, chief deputy and sheriff are members of the Command Staff.  The name itself demonstrates who the *bona fide* executives and/or "high level" officials are in the organization—those in the "Command Staff." Moreover, the Command Staff is paid on a different basis than the peace officer employees (including lieutenants).  The Command Staff do not drive marked patrol cars, as Lieutenants do.  The Command Staff generally do not wear bullet resistant vests or routinely carry equipment necessary for first response, as Lieutenants do.

In the Lieutenants' Job Description, Plaintiffs' job is considered "mid-level management" who "leads *operational segments* engaged in all functions related to law enforcement duties to protect lives, property and rights of the citizens of Travis County." (Exhibit J-4).  The title "mid-level management" is not a *bona fide* executive.  This is made clear when the Lieutenants' job description is compared to their immediate superior,

Captains. Captains are described as "senior management within the department." (Exhibit J-72). Unlike the Lieutenants, captains do not have to have the ability to use deadly force, and unlike Lieutenants, Captains are not required to "be able to partially lift and drag an average weight person of 150lbs, a distance of 75 feet for the evacuation of individuals unable to assist themselves during emergencies." (Exhibits J-4, J-72).

Even Travis County does not classify the Lieutenants as management. As set forth in Exhibit J-95, law enforcement lieutenants are classified as "Peace Officers", while law enforcement captains are classified as classified command officers (abbreviated as "Clf-Command Ofr"). (J-95 at p. 2).

*Eighth*, the Lieutenants get paid similar to a sergeant for the same type of non-exempt work.[4] The Plaintiffs testimony indicated that any management duties that the Lieutenants undertake are almost identical to management duties of sergeants. Moreover, Plaintiffs are paid only marginally more than many of the Sergeants that rank beneath them. As set forth in Plaintiffs Exhibit 2A thru 2E, the Lieutenants compensation is similar to that paid to sergeants as set forth in Exhibit J-88.[5] The testimony indicated that this was in part due to sergeants' ability to collect overtime pay. The true divide between pay is between the Command Staff, beginning at captain, and the lieutenants. The highest pay for law enforcement captains is $142,825.07, nearly $30,000 more than the highest pay for law enforcement lieutenants. (J-87 at p. 12).

---

[4] "Factors to consider when determining the primary duty of an employee include, but are not limited to, [1] the relative importance of the exempt duties as compared to other types of duties, [2] the amount of time spent performing exempt work, [3] the employee's relative freedom from supervision, and [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 CFR 541.700(a)

[5] For instance, sergeants annually earned $110,398.03 (J-88 at Bates 0946815); $112,379.38 (Bates 0946834); $110,430.26 (Bates 0947157); $109,483.30 (Bates 947195); $113,013.76 (Bates 0947252); $115,618.52 (Bates 0947442); $118,244.88 (Bates 0941625); $109,998.96 (Bates 0942483); $131,543.72 (Bates 0942712); $123,670.47 (Bates 0942736); $111,774.90 (Bates 0941740); $109,354.09 (Bates 0943687); $110,955.51 (Bates 0943711); $115,625.29 (Bates 0943987); $112,162.66 (Bates 0944011).

The jury could have relied on some or any of the foregoing evidence and other evidence adduced at trial to conclude that the Plaintiffs' primary duty was front line law enforcement and not management.  At the very least, the above evidence demonstrates that Travis County did not meet its burden of proof.

**Suggestions and recommendations regarding hiring/firing not given particular weight**

Travis County did not meet its burden to demonstrate that that each of the Plaintiffs suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of status (collectively referred to herein as "hiring/firing") are given particular weight.

The evidence demonstrated that the Lieutenants remote participation in the hiring/firing process through (1) recommendations regarding discipline and (2) participation in the oral portion of hiring and promotional boards.

The evidence demonstrated that the Lieutenants do not handle employee complaints and grievances or disciplining employees.  Unlike captains, the Lieutenants cannot even impose a suspension of a subordinate.  Any recommendations that the Lieutenants can provide are of the same type that can be provided by sergeants.  Even if the Lieutenants did make a recommendation regarding hiring/firing, such recommendation can go all the way up the chain of command, to the Sheriff.  As Captain Smith testified, if the employee does not agree with the Sheriff's decision, even that decision can be appealed to a full civil service hearing.  Finally, Travis County did not provide a *single actual instance* of any recommendation by any of the Plaintiffs regarding an actual subordinate ever actually being given particular weight.

In regard to the hiring and promotional boards, the Lieutenants weight at most is one vote out of the five participants on the board.  The participants can be sergeants,

detectives, or lieutenants, and participation in such boards is voluntary.  The top and the bottom score of the board members are thrown out.  Accordingly, at most the Lieutenants score on an oral board consists of 33% of the oral score (1 in 3), and at worst it does not count at all (*i.e.* if it is the highest or lowest score that is discarded).  In addition, the oral score makes up only fifty percent of the total score, with a written test making up the other half.  Accordingly, at most the Lieutenants participation in an oral board is worth between zero and 16.5% of the total score (50% of 33% is 16.5%).  These total scores are than provided to the Sheriff, and the Sheriff can pick from the top 3 scores.  Therefore, the Lieutenants score, again might not have actually been given any weight in promotion or hiring.

Likely with this tenuous connection in mind, the Department of Labor indicated that promotions, like that in the Sheriff's Office, governed by "civil service exam and process" are not management:

> However, the appraisals occupy a small amount of the sergeants' time and are not recommendations for promotion as 29 C.F.R. 541.102 requires in order for the appraisals to be a management activity; instead, promotion is governed by a civil service exam and process.

DOL *Mullins Amicus* Br. at 7.

Finally, Travis County did not provide a single actual instance of any of the Lieutenants participation in a hiring or promotional board actually impacting the hiring or promotion of any actual employee.

The jury could have relied on some or any of the foregoing evidence and other evidence adduced at trial to conclude that the Plaintiffs' suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of status are not given particular weight.  At the very least, the above evidence demonstrates that Travis County did not meet its burden of proof.

***Travis County knew and/or showed reckless disregard for the fact that its conduct was prohibited by the FLSA***

The evidence demonstrates that Travis County either knew or showed reckless disregard to the fact that it had misclassified the Lieutenants as exempt.

In August 2004, Lt. Robert Mills informed his captain and Debbie Rich—the head of human resources in the Travis County Sheriff's Office—that he believed lieutenants were misclassified as exempt.  (Exhibit J-80 at Escribano002975).  In September 2004, Lt. Mills followed up with Ms. Rich, asking if she ever got a response, and Ms. Rich responded "Not yet."  (Exhibit J-80 at Escribano002981-82).  In October 2005, Lt. Mills again asked Ms. Rich "Did you ever get anything back."  Lt. Mills testified that he never received a response from Ms. Rich.  Though this email exchange concerned the 2004 rule instituted the front line law enforcement/first responder regulation, it put Travis County on notice that it needed to investigate the exempt/non-exempt status of the Lieutenants. The only evidence was that Travis County did not conduct any investigation regarding Lieutenants exempt status, despite the fact that Lt. Mills made them aware of the misclassification.

In September 2013, then-lieutenant William Poole responded to an email from Sergeant Jeff Anderson, acknowledging that he believed lieutenants in the TCSO should no longer be exempt.  (Exhibit J-81).  William Poole was subsequently promoted to Major over the entire law enforcement division, and at the time of trial, he was a Captain. As a member of the Command Staff, he acknowledged that, at the very least, he suspected that TCSO was not in full compliance with the FLSA.  Travis County knew, but did nothing.

Despite knowing that the Lieutenants and members of the Command Staff were questioning their classification, Travis County did not even conduct an inquiry.  Instead,

11

the County Auditor—whose job requires her to audit for compliance with laws, including the FLSA—testified via deposition testimony that despite having worked in the County Auditor's Office since 2002 she was not aware of any inquiry into the exempt status of lieutenants in response to FLSA changes (other than a change in 2016). As demonstrated in Lieutenant Mills testimony and email communications, the front line law enforcement exception came into effect in 2004.

Courts in the Fifth Circuit have held that similar actions by employers constituted willful violations of the FLSA:

> Courts in this Circuit and others have found the following types of evidence support a finding of willfulness: an employer's admission it knew it was violating the FLSA prior to suit, *see Singer v. City of Waco*, 324 F.3d 813, 821–22 (5th Cir.2003) (fire chief admitted he was aware firefighters were being paid incorrectly); an employer's continuation of a pay practice after being put on notice the practice violated the FLSA, *see Reich v. Bay, Inc.,* 23 F.3d 110, 117 (5th Cir.1994) (local Wage and Hour office director informed employer its overtime practices violated the FLSA); an employer's prior violations of the FLSA, *see Chao v. A–One Med. Servs.,* 346 F.3d 908, 919 (9th Cir.2003) (noting prior FLSA violations, even though not found willful, put employer on notice of FLSA requirements); *Sealey v. EmCare, Inc.,* No. 2:11–CV–00120, 2013 WL 164040, at *4 (S.D.Tex. Jan. 14, 2013) (evidence employer previously litigated "a closely related overtime issue" sufficient to find willfulness); and an employer's reliance on a blanket policy a certain type of employee was exempt, absent any review or study of whether any exemption applied, *826 see Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1280–81 (11th Cir.2008) (employer never studied whether employees were exempt yet knew the employees in question spent most of their time performing manual labor).

*Clark v. Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813, 825–26 (W.D. Tex. 2015)

Despite Lieutenant Mills warning in 2004, Major Poole's sentiment in 2013, and the County Auditor's admission that she is required to ensure compliance with the FLSA, the testimony and evidence indicated that Travis County conducted no investigation. They either knew or should have known, and deliberate ignorance does not excuse compliance with a remedial statute such as the FLSA. *See Clark v. Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813, 834 (W.D. Tex. 2015) (finding that it "boggles the mind" that

12

a large employer failed "to conduct a comprehensive, documented review of the FLSA-exempt status . . . .").

**The FLSA's Backpay requirement**

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C.A. § 21.   "The FLSA, 29 U.S.C. § 207(a)(1), generally requires an employer to pay employees who work more than forty hours per seven-day work week at a rate for the overtime not less than one and one-half times the employee's regular rate."  *Diaz v. Castro*, 122 F. Supp. 3d 603, 609 (S.D. Tex. 2014).

As a remedial statute, the FLSA does not require an employee to calculate the number of hours worked exactly:

> 'It is ... a fundamental precept of the FLSA that an employee should not be denied [recovery] because proof of the number of hours worked is inexact or not perfectly accurate.'

*Diaz v. Castro*, 122 F. Supp. 3d 603, 611 (S.D. Tex. 2014) (internal citations omitted).

Under the FLSA, the regular hourly rate for salaried employees "is computed by dividing the salary *by the number of hours which the salary is intended to compensate.*" 29 C.F.R. § 778.113(a).  Plaintiffs testified that their total compensation was based upon their final yearly paystubs divided by fifty-two weeks and divided by the forty-hour work week.  (Exhibits J-7, J-16, J-24, J-43, J-34, J-52).  "[T]he jury determines the employer's liability for back pay damages and, upon a finding of liability, the amount of the back pay award. *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018, 1032 (5th Cir. 1993) (in regard to an enforcement action pursuant to 29 U.S.C. § 216(c)); *compare Mata v. Caring*

*For You Home Health, Inc.*, 94 F. Supp. 3d 867, 876 (S.D. Tex. 2015) (finding when no dispute regarding hours or rate, "the amount of unpaid overtime compensation due to her is *determinable* as a matter of law . . . .").

The evidence presented at trial is more than legally sufficient evidence in support of the jury's verdict finding that Plaintiffs are entitled to backpay found by the jury.

Each of the Plaintiffs indicated that they logged in and logged out of the MDC/CAD system when they started and ended their shifts.   (Exhibits P-2A thru P-2F, P-3, P-4). Moreover, the testimony at trial demonstrated that no off-duty hours were included in the calculation of hours worked by the Plaintiffs.   The Plaintiffs testified that their official time records were inaccurate and that their supervisors knew their time records were inaccurate. Plaintiffs also testified that the number of hours calculated based off the MDC/CAD logs underrepresented the number of hours they worked;

Chief Sylvester testified that he trusted that the Plaintiffs had logged-in and out of the MDC/CAD appropriately and that the Plaintiffs were upstanding officers in the Travis County Sheriff's Office. (Dep. Sylvester 140:2-141:4).

The parties stipulated that the workweek for all Travis County employees was a 40-hour workweek in seven day period; accordingly the total compensation for the Plaintiffs is intended to compensate them for a 40 hour work week.   (Court's Charge to the Jury, Stipulation No. 5, [Doc. 65]).   Moreover, the parties stipulated that Plaintiffs had worked more than 40 hours for some of the weeks relevant to the suit.   *Id.* at Stipulation No. 6.

The jury's verdict for backpay owed to each Plaintiff was as follows:

Bryce Miller $24,753.97
Robert Mills $6,237.29
Michael Strawn $6,754.89
Michael Canales $60,010.60 ($56,909.30 + $3,101.30)
Jason Jewert $21,170.37 ($12,242.51 + $8,927.86)
Belinda Mangum $18,704.98

The jury relied on the substantial evidence set forth above and other evidence in the trial record to reach this verdict.

**The FLSA's Liquidated Damages requirement**

"Section 216(b) provides that employers found liable for back pay in a § 216 suit 'shall be liable ... in an additional equal amount as liquidated damages.' This language mandates the award of liquidated damages in an amount equal to actual damages following a determination of liability for back pay in a § 216 action." *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018, 1030 (5th Cir. 1993).   "Liquidated damages double the total damages awarded." *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 246 n. 13 (5th Cir. 2016) (citing *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 (5th Cir. 1998)).   "Liquidated damages in this context are compensatory, not punitive; they constitute[ ] compensation for the retention of a work[er]'s pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages."   *Clark v. Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813, 833 (W.D. Tex. 2015) (internal quotations omitted).

29 U.S.C. § 260 qualifies this automatic award of liquidated damages in limited circumstances where the employer shows its actions were both in good faith and on reasonable grounds:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 16 of this title.

*Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 (5th Cir. 1998).

However, the Fifth Circuit determined that a willfulness finding by the jury precludes a finding that the employer acted in good faith: "the jury found the City's

actions to be willful. As a result, the City could not show that it acted in good faith. Thus, the district court did not abuse its discretion in assessing liquidated damages." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003). Accordingly, the jury's finding that Travis County acted willfully necessitates liquidated damages in this matter.

In any event, Defendant has not provided sufficient evidence at trial to meet its "substantial burden" to demonstrate "good faith and a reasonable belief that its actions did not violate the FLSA". In actuality, the jury found that the Defendant's actions were willful and Defendant provided *no evidence* at trial that it acted in good faith *or* with a reasonable belief. Instead, all the evidence at trial indicated that Defendant did not act with good faith nor with a reasonable belief. Since Defendant has not and cannot meet this substantial burden, the Court must award Plaintiffs liquidated damages in an equal amount to the backpay owed to each Plaintiff pursuant to the verdict.

As such, Plaintiffs are entitled to an additional amount of liquidated damages in the following amounts:

Bryce Miller $24,753.97
Robert Mills $6,237.29
Michael Strawn $6,754.89
Michael Canales $60,010.60
Jason Jewert $21,170.37
Belinda Mangum $18,704.98

**Section 1983 claim**

In regard to the Section 1983 claim, Plaintiffs proved that the overtime provision of the county personnel policy requires employees to be compensated at 1.5 times their regular rate over 40 hours in a workweek and that Plaintiffs proved each element of their Section 1983 claim.

Section 157.022 of the Texas Local Government Code provides:

> (a) A peace officer employed by a county with a population of more than one million may not be required to work more hours during a calendar week than the number of hours in the normal work week of the majority of other county employees. . . .
>
> (c) A peace officer who elects to work extra hours during a calendar week shall be compensated on a basis consistent with overtime provisions of the county personnel policy.

Tex. Loc. Gov't Code Ann. § 157.022.

"The parties stipulated that each of the Plaintiffs is a peace officer, and that Travis County has had a population over 1 million since 2010, and that the majority of non-peace officer county employees work 40 hours in a calendar week." (Court's Charge to the Jury at p. 12 [Doc. 65]).

The Court instructed the jury that to prove their Section 1983 claim, Plaintiffs had to demonstrate:

> 1. an official policy or custom existed;
> 2. a policymaker for Travis County knew or should have known about the policy or custom;
> 3. the policymaker was deliberately indifferent; and
> 4. the policy or custom was the moving force leading to the constitutional violation.

Lt. Miller testified that an official policy or custom existed not to pay Lieutenants overtime, despite the requirements of Section 157.022. Each Lieutenant testified that they were not paid for hours worked over forty hours in a workweek.

Both County Auditor Riley and Chief Sylvester were policy makers who knew or should have known about such policy or custom and were deliberately indifferent. The trial evidence indicated that on July 15, 2015, Christina Adair, a senior employee in Travis County's auditor's office, emailed the Travis County Sheriff's Office, Chief Deputy, Jim Sylvester. (Exhibit J-71). This email was entitled "Overtime" and discussed Section 157.022 of the Texas Local Government Code. *Id.* Ms. Adair stated:

Section 157.022 of the local government code, see below, will probably prevent us from changing from 40 hours just like it required us to move from the 160 hour overtime trigger to today's 40 hour trigger once the 2010 census showed that Travis County had reached a population of more than one million.

Ms. Adair then excerpted the entirety of Section 157.022 in her email.  In addition to Section 157.022(a)'s requirement that peace officers' overtime be calculated pursuant to a calendar week rather than a calendar month, Section 157.022(c) requires that Travis County pay peace officers overtime consistent with how it pays other county employees.  Ms. Adair's email put Chief Sylvester on notice that Travis County had to comply with Section 157.022, including subsections (a) and (c).  Neither Chief Sylvester nor Travis County could pick and choose which subparts of Section 157.022 were mandatory.  If as Ms. Adair admitted, Travis County and Chief Sylvester had to comply with subsection (a), Travis County and Chief Sylvester also had to comply with subsection (c).

In regard to this email, County Auditor Nicki Riley testified as follows:

19 Q. Okay. If you read Section 157.022(c) -- go
20 ahead and read that to yourself, please.
21 A. Okay.
22 Q. What does that section mean to you?
23 MS. YBARRA: Objection; form.
24 THE WITNESS: I'm thinking.
25 Q. (BY MR. SCHEICK) Okay.

1 A. It means to me that if a peace officer works
2 over 40 hours -- extra hours -- according to our
3 personnel policy, it's over 40 hours -- they'll be
4 compensated in accordance with our policy.
5 Q. Okay. So Travis County's policy is over 40
6 hours a week, right?
7 A. Yes.
8 Q. And so if a peace officer works over 40 hours a
9 week, they should be compensated for overtime just like
10 everyone else. Is that what this says?
11 A. That's what it says.

(Dep. Riley 88:19-89:11).

Not only did the County Auditor testify that peace officers, such as the

Lieutenants, should be compensated for overtime just like everyone else for working over 40 hours a work, the Travis County Code indicates that that compensation is time and a half.  Travis County Code for all Employees indicates that "non-exempt employees are eligible for overtime compensation, or compensatory time, at a rate of one and one-half hours for each approved hour worked in excess of 40 hours actually worked per week." (Exhibit J-70, 320.1259).  Lt. Miller also testified that most employees in Travis County are compensated at time and a half for hours over 40 hours in a week.

Contrary to Travis County's argument, nothing in Section 157.022 addresses the FLSA's exempt/non-exempt classifications.  The FLSA does not preempt state statutes that are more stringent than the FLSA.[6]  *McLeland v. 1845 Oil Field Services*, 97 F. Supp. 3d 855, 864 (W.D. Tex. 2015).

At trial, County Auditor Riley testified that she was a decision maker for Travis County.  She also testified that she audited to the laws and that her job was to make sure that Travis County employees were paid in accordance with law, including the Local Government Code.  The email from Ms. Adair to Chief Deputy Sylvester also informed Chief Sylvester of the requirements that peace officers in Travis County (such as the Lieutenants) must be paid overtime consistent with other Travis County employees.  Ms. Adair specifically informed Chief Sylvester that Section 157.022 applied to Travis County—and this Section requires Travis County to pay peace officers overtime.

In regard to the final element, the County Auditor testified that she was required to ensure that employees were paid in accordance with the law, including the FLSA and the Local Government Code.  Her failure to ensure the Lieutenants were paid according to the Local Government Code was the moving the moving force to the constitutional

---

[6] *See also* Plaintiffs' Response to Motion to Reconsider [Doc. 52], which is incorporated herein by reference.

violation.   Moreover, Chief Sylvester communicated with Christina Adair in order to determine if he should change the overtime policy.  He received information that the policy to not pay peace officers was incorrect, but did not change the policy or custom.

The jury could have relied on some or any of the foregoing evidence and other evidence adduced at trial in support of its verdict.

## **PRAYER**

For the reasons set forth above, Plaintiffs pray that the Court enter a judgment on the jury's verdict finding Defendants liable for violations of the FLSA, and Section 1983 and award:

A.      Unpaid overtime backpay in the following amounts:

> Bryce Miller $24,753.97
> Robert Mills $6,237.29
> Michael Strawn $6,754.89
> Michael Canales $60,010.60
> Jason Jewert  $21,170.37
> Belinda Mangum $18,704.98

B.      Liquidated damages in the following amounts:

> Bryce Miller $24,753.97
> Robert Mills $6,237.29
> Michael Strawn $6,754.89
> Michael Canales $60,010.60
> Jason Jewert  $21,170.37
> Belinda Mangum $18,704.98

C.      Order Defendant to pay post-judgment interest at the highest lawful rate for all amounts, including attorney fees, awarded against Defendant, pursuant to 28 U.S.C. § 1961;

D.      Conduct a hearing on Plaintiffs' attorney's fees, costs and expenses, and after such hearing order Defendant to pay Plaintiffs' attorney's fees and costs and expenses pursuant to 29 U.S.C. § 216(b);

E.      Defendants' violated 42 U.S.C. § 1983 and Texas Local Government Code Section 157.022 and pursuant to F.R.C.P. 57 and 28 U.S.C. §§ 2201 *et seq.* declare that Defendant must compensate all law enforcement lieutenants (as peace officers in the Travis County Sheriff's Office) overtime pursuant to Texas Local Government Code

Chapter 157, and permanently enjoin Defendant from failing and refusing to pay lieutenants in the Travis County Sheriff's Office one and one-half times their regular rate for all hours in excess of 40 worked in each work week; and

      F.      Order all further relief, whether legal, equitable or injunctive, as may be necessitated to effectuate full relief to the Plaintiffs.

Respectfully submitted,


*/s/ Jacob Scheick*_____
Bo Blackburn
State Bar No. 24006853
Jacob Scheick
State Bar No. 24060563
Almanza, Blackburn & Dickie, LLP
2301 S. Capital of Texas Hwy.
Bldg. H
Austin, Texas 78746
(512) 474-9486
(512) 478-7151 – Fax
**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 20, 2018, a copy of the foregoing was served upon the following counsel of record via the Court's electronic filing system and via facsimile:

LAURIE R. EISERLOH
State Bar No. 06506270
laurie.eiserloh@traviscountytx.gov
AMY S. YBARRA
State Bar No. 24013573
Amy.Ybarra@traviscountytx.gov


*/s/ Jacob Scheick*_____
Jacob Scheick

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **BRYCE MILLER, ROBERT MILLS,** | § | |
| **MICHAEL STRAWN, JASON JEWERT** | § | |
| **MICHAEL CANALES, and** | § | |
| **BELINDA MANGUM** | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO.** |
| | § | **1:16-cv-01196-RP** |
| **v.** | § | |
| | § | |
| **TRAVIS COUNTY, TEXAS, and** | § | |
| **SARAH ECKHARDT** | § | |
| **in her official capacity** | § | |

## ORDER

Before the Court is Plaintiffs' Motion for Entry of Judgment (the "Motion"). After reviewing the pleadings on file and the trial record and exhibits, the Court hereby orders that the Motion is meritorious and is GRANTED in all respects.

Accordingly, the Court HEREBY ORDERS, ADJUDGES, AND DECREES that Defendant:

A.    Violated the FLSA by mis-classifying Plaintiffs as exempt employees;

B.    Unpaid overtime backpay in the following amounts:
      Bryce Miller $24,753.97
      Robert Mills $6,237.29
      Michael Strawn $6,754.89
      Michael Canales $60,010.60
      Jason Jewert  $21,170.37
      Belinda Mangum $18,704.98

C.    Liquidated damages in the following amounts:
      Bryce Miller $24,753.97
      Robert Mills $6,237.29
      Michael Strawn $6,754.89
      Michael Canales $60,010.60
      Jason Jewert  $21,170.37
      Belinda Mangum $18,704.98

D.      Pay Plaintiffs post-judgment interest on any unpaid amounts set forth above or awarded as attorney's fees and costs, pursuant to 28 U.S.C. § 1961; and

E.      Plaintiffs submit a motion for attorney's fees, costs and expenses, and appear at a hearing to be set by the Court for award of Plaintiffs' attorney's fees and costs and expenses pursuant to 29 U.S.C. § 216(b);

F.      Defendants' violated 42 U.S.C. § 1983 and Texas Local Government Code Section 157.022, and pursuant to F.R.C.P. 57 and 28 U.S.C. §§ 2201 *et seq.* the Court declares that Defendant must compensate all law enforcement lieutenants (as peace officers in the Travis County Sheriff's Office) overtime pursuant to Texas Local Government Code Chapter 157, and permanently enjoins Defendant from failing and refusing to pay lieutenants in the Travis County Sheriff's Office one and one-half times their regular rate for all hours in excess of 40 worked in each work week.

SIGNED THIS the _____ day of _____, 201__.


_____
HON. ROBERT PITMAN
UNITED STATES DISTRICT JUDGE